FILED 09 JUL 24 1448USDC-ORP

FILED
JUL 24 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GUY FRIDAY EHLER,

       Petitioner,

  v.

OREGON BOARD OF PAROLE,
MARK NOOTH

       Respondents.

Civ. No. 08-483-KI

OPINION AND ORDER

ANTHONY D. BORNSTEIN
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

       Attorney for Petitioner

JOHN KROGER
Attorney General
LESTER R. HUNTSINGER
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301

       Attorneys for Respondent

1 - OPINION AND ORDER -

KING, District Judge.

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner alleges the 2004 decision of the Oregon Board of Parole ("Board") to defer his parole violated the *Ex Post Facto* Clause. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#2) is DENIED, and this proceeding dismissed.

## BACKGROUND

In November 1979, Petitioner was convicted of a number of sex offenses including two counts of Rape in the First Degree, two counts of Sodomy in the First Degree, and one count of Attempted Rape in the First Degree for acts involving five victims aged 11 to 16 years old. Petitioner did not know his victims. He was designated a sexually dangerous offender pursuant to Or. Rev. Stat. § 426.510 and sentenced to an indeterminate 90 years in prison.

In July 2004, Petitioner underwent a psychological evaluation by Dr. David Starr in anticipation of an upcoming parole hearing. Dr. Starr noted previously examining Petitioner in 1997 and 1998 and determining he met diagnostic criteria for Paraphilia NOS with sadistic features and Narcissistic Personality Disorder in those evaluations. (Resp't. Ex. 104 at 61.) Dr. Starr's 2004 evaluation concluded with a diagnosis of Paraphilia NOS with sadistic features (AXIS I) and Narcissistic Personality Disorder (AXIS II). (*Id.* at 65.) Dr. Starr noted Petitioner was charming and engaging, but

2 - OPINION AND ORDER -

somewhat controlling during the evaluation. He opined:

> [Petitioner] is not a psychopath, however, the pattern of his sexually assaultive behavior (weapons and threats of death) are significant risk factors in reviewing [his] possibilities for reoffense. His lack of insight regarding risk and density of his sexual offenses suggests a moderate risk for reoffense. [Petitioner's] personality structure is narcissistic in that he tends not to appreciate what others might think or say about his behavior and he is over involved with his own social stimulus value. Consequently, he would be a difficult prospect for parole. He may not agree with his parole officer and he would have a tendency to rationalize his behavior.
>
> If [Petitioner] is released from prison, he should be monitored very closely. Electronic surveillance and frequent parole meetings would be recommended. Certainly he should participate in a sex offender treatment program. His tendency to overlook his own faults and his lack of understanding of the characteristics of the risk he presents to the community contribute to a moderate risk to the community if he is paroled.

(*Id.* at 65-66.)

On October 6, 2004, Petitioner had an exit interview before a three-member panel of the Board. The Board acknowledged receiving the packet of materials Petitioner submitted in support of his release. (Resp't. Ex. 103, p 190.) Following deliberations, the Board panel unanimously decided to defer Petitioner's release. (*Id.* p 239.) Petitioner questioned the Board regarding its determination that he suffered from a present severe emotional disturbance given his understanding that, under the statute in effect at the time he committed his offenses, the doctor who examined him had to make that determination. (*Id.* p 240.)

3 - OPINION AND ORDER -

Petitioner was told his understanding of what the statute required was not correct, that he had previously raised this point, and the Board had fully explained its authority under the applicable statute in Administrative Review Response #7, dated January 6, 2003.[1] (*Id.*) The Board's written decision specified:

> Based on the doctor's report and diagnosis, coupled with all the information the Board is considering, the Board concludes that the inmate suffers from a present, severe emotional disturbance that constitutes a danger to the health or safety of the community. The Board considered this matter under the laws in effect at the time of the commitment offenses.
>
> The Board defers release date for 24 months . . . .

(*Id.* p 244.)

Petitioner requested administrative review of the Board's decision, but the Board denied him relief in Administrative Review Response #8, dated May 1, 2006. (*Id.* p 313.) Petitioner filed a Motion for Leave to Proceed with Judicial Review. (Resp't. Ex. 105.) The Oregon Court of Appeals denied Petitioner's motion, and the Oregon Supreme Court denied review. (Resp't. Exs. 107 & 109.)

From Petitioner's habeas petition he is understood to allege:

> (1) an *ex post facto* violation when the Board failed to apply Or. Rev. Stat. § 144.125(3)(1977) at Petitioner's 2004 parole hearing and the Board, rather than the examining psychologist, made the finding Petitioner suffered a present, severe emotional disturbance that constitutes a danger to the health or safety of the community.

---

[1] See Resp't. Ex. 103, p 131.

4 - OPINION AND ORDER -

    (2) a violation of due process from the burden of proof the Board applied in determining he suffers a "present severe emotional disturbance" and from the Board deferring parole 24 months instead of 12.

    (3) a violation of due process when the Board failed to treat his mental illness.

Petition at 6-7.

## DISCUSSION

As a preliminary matter, I note the parties agree the Oregon Board of Parole is not a proper respondent to this action. Accordingly, the Board is dismissed as respondent.

### I. CLAIMS NOT ARGUED

In his Memorandum, Petitioner specifies his claim challenging the 2004 Board decision to defer his release date is based on an *ex post facto* violation. (Mem. at 2 & 5.) No argument is advanced in support of the due process claims presented in Grounds Two and Three. Pursuant to 28 U.S.C. § 2248, "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." I have reviewed the record and find Petitioner is not entitled to relief on Grounds Two and Three.

On habeas review, Petitioner must show that the state court determination of his claims was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C.

5 - OPINION AND ORDER -

§ 2254(d). By not advancing Grounds Two and Three in his memorandum, Petitioner has failed to meet the burden of proof for habeas relief under § 2254(d). Accordingly, relief on these claims must be denied.

## II. THE MERITS

### A. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In construing this provision the Supreme Court stated: "[I]t seems clear that Congress intended federal judges to attend with the utmost care to state court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 386 (2000). "We all agree that state court judgments must be upheld unless, after the closest examination of the state

court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 389. A state court's findings of fact are presumed correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). When a state court does not supply the reasoning for its decision, a federal court does an independent review of the record to determine whether the state court decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 982 (9th Cir. 2000). If the federal court does not find that the state court decision was objectively unreasonable, deference is given to the state court decision and habeas relief is denied. *Id.* at 981-82; *see also Williams*, 529 U.S. at 386-89. In the absence of a reasoned Oregon court decision, the Court conducted an independent review of the record in reviewing Petitioner's claim.

(1) <u>Contrary to, or unreasonable application of clearly established Federal law</u>

"'Clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Circuit court law may be used

7 - OPINION AND ORDER -

as guidance in determining whether a state court decision is an unreasonable application of the law, but not for purposes of determining what the law is. *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004), *cert. denied*, 126 S.Ct. 484 (2005).

A state court decision is "contrary to" clearly established Federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from [the Supreme Court] precedent." *Lockyer*, 538 U.S. at 73 (internal quotations omitted).

A state court decision is an "unreasonable application" of clearly established Supreme Court law when "the state court identifies the correct governing legal principle [ ] but unreasonably applies that principle to the facts of the [ ] case." *Lambert*, 393 F.3d at 974 (citing *Williams*.) The state court's application of law must be *objectively unreasonable*. *Id.* (emphasis added). "Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [the law] incorrectly. An *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002), rehearing denied, 537 U.S. 1149 (2003) (internal

8 - OPINION AND ORDER -

citations omitted). "[I]t is the habeas applicant's burden to show that the state court applied [the law] to the facts of his case in an *objectively unreasonable manner*." *Id.* (emphasis added).

    (2)   The *Ex Post Facto* Clause

The *Ex Post Facto* Clause of the U.S. Constitution prohibits states from enacting laws which, by retroactive operation, increase the punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 249 (2000). A law violates the *Ex Post Facto* Clause if: (1) it "appl[ies] to events occurring before its enactment," *Weaver v. Graham*, 450 U.S. 24, 29 (1981); and "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Calif. Dep't. of Corr. v. Morales*, 514 U.S. 499, 504 (1995). There is no *ex post facto* violation if it "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 513.

The relevant inquiry in cases involving parole is whether the amended rule creates a significant risk of prolonging a prisoner's incarceration. *Garner*, 529 U.S. at 251. However, whether retroactive application of a change in parole law violates the prohibition against *ex post facto* legislation "is often a question of particular difficulty when the discretion vested in a parole board is taken into account." *Id.* at 250. In determining whether

9 - OPINION AND ORDER -

a change in parole laws actually resulted in increased punishment, policy statements, along with actual practices of the Board, are important considerations. *Id.* at 256.

B. <u>ANALYSIS</u>

Petitioner alleges the Board's decision to defer his parole in 2004 constitutes an *ex post facto* violation because the Board applied a post-1993 version of Or. Rev. Stat. § 144.125(3). (Mem. at 9-11.) However, in its 2004 decision, the Board specified it "considered this matter under the laws in effect at the time of the commitment offenses." (Resp't. Ex. 103, p 239 & p 244.) A threshold question for this Court is whether the Board applied a post-1993 version of Or. Rev. Stat. § 144.125(3).

(1) <u>Or. Rev. Stat. § 144.125(3)</u>

At the time Petitioner committed his offenses in 1979, Or. Rev. Stat. § 144.125(3)(1977) specified: "If a psychiatric or psychological diagnosis of present severe emotional disturbance has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date." (*Id.* p 264.) In 1981, subsequent to *Daniels et.al. v. Cogswell*, Dist. Court for the District of Oregon Case N. 79-651 (1979)(holding the Board could not defer release solely on the basis of a severe emotional disturbance), the Oregon legislature amended Or. Rev. Stat. § 144.125(3) to read: "If a psychiatric or psychological diagnosis of present severe emotional disturbance

10 - OPINION AND ORDER -

such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date." (*Id.* p 265.) In 1993, the legislature amended the statute to read: "If the board finds the prisoner has a mental or emotional disturbance, deficiency, condition or disorder predisposing the prisoner to the commission of a crime to a degree rendering the prisoner a danger to the health or safety of the community, the board may order the postponement of the scheduled parole release until a specified future date."

The Oregon Court of Appeals has held that under both pre-1993 and post-1993 versions of Or. Rev. Stat. § 144.125(3) the determination of the presence of a "severe emotional disturbance" is a legal standard for the Board to apply to the facts, not a medical standard. *Weidner v. Armenakis*, 154 Or.App. 12, 959 P.2d 623, *vacated and rem'd* 327 Or. 317, 966 P.2d 220 (1998), *withdrawn by order July 13, 1998, reasoning reaffirmed and adopted Merrill v. Johnson*, 155 Or.App. 295, 964 P.2d 284 (1998); see also *Brown v. Palmateer*, 379 F.3d 1089, 1094 (9th Cir. 2004). Under the pre-1993 versions, however, "a psychiatric or psychological diagnosis is a prerequisite to the Board's consideration." *Weidner*, 154 Or.App. at 19. And, the diagnosis "must provide the foundation for the Board's finding that the emotional disturbance in question is

11 - OPINION AND ORDER -

'present' and 'severe.'" *Christenson v. Thompson*, 176 Or.App. 54, 61, 31 P.3d 449 (2001).

This Court accepts the meaning ascribed to the statute by the Oregon courts. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002)("A state court has the last word on the interpretation of state law."). Thus, under the version of Or. Rev. Stat. § 144.125(3) applicable to Petitioner, *a psychiatric or psychological diagnosis must provide the foundation* for the Board's determination that Petitioner suffers from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community.

(2) 2004 Board Decision

Petitioner's 2004 psychological evaluation resulted in an Axis I diagnosis of Paraphilia NOS with sadistic features and an Axis II diagnosis of Narcissistic Personality Disorder. Dr. Starr's report discussed the basis for these diagnoses and discussed observations made during Petitioner's evaluation which led him to conclude Petitioner would be "a difficult prospect for parole." It is clear from the Board's written decision that the doctor's diagnoses and report provided the foundation for the Board's determination Petitioner suffered from a present severe emotional disturbance such as to constitute a danger to the health or safety of the

12 - OPINION AND ORDER -

community.  Thus, the Board complied with the requirements of Or. Rev. Stat. § 144.125(3) applicable to Petitioner.  That the Board also considered other information does not lead to a contrary conclusion.  The statute requires that a diagnosis provide *the foundation* for a Board determination that an emotional disturbance is present and severe, but it does not preclude the Board from taking other information into consideration.

The record does not support Petitioner's claim that the Board applied a post-1993 version of Or. Rev. Stat. § 144.125(3), and Petitioner's conclusory assertion that, on their own, the diagnoses and report were not sufficient for the Board's determination of a present and severe emotional disturbance is not persuasive.

## **CONCLUSION**

The Oregon Board of Parole is dismissed as respondent.

Based on an independent review of the record, the Court finds the Board's 2004 decision deferring Petitioner's release did not constitute an *ex post facto* violation.  Accordingly, Petitioner's Petition for Writ of Habeas Corpus (#2) is DENIED.

IT IS SO ORDERED.

DATED this 24 day of July, 2009.

                                                       /s/ Garr M. King
                                                      Garr M. King
                                                      United States District Judge